D.E. WASAFF, Substitute Trustee and Steve Elder, Trustee, Appellants,

v.

Ann Lorehn LIPSCOMB, et al., Appellees.

No. A14–86–148–CV.

Court of Appeals of Texas, Houston (14th Dist.).

June 26, 1986.

Steve Elder, Brookshire, for appellants.

Sherry L. Robinson, Brookshire, Michael C. Balog, Sealy, for appellees.

Before J. CURTISS BROWN, C.J., and MURPHY and ROBERTSON, JJ.

## OPINION

ROBERTSON, Justice.

This is an appeal from an order granting a temporary injunction enjoining a trustee's sale of a 19.414 acre tract of land. While appellants assign some thirteen points of error, the controlling issue is whether the trial court abused its discretion in granting the injunction based upon the documentary and other evidence before him. We find he did and reverse.

None of the facts are disputed. Edmond L. Lorehn and wife, Dorothy, are the parents of six children: Ann, Korel, Jhonna, David, Elizabeth and Linda. In 1966 the parents, by general warranty deed, transferred some 57.67 acres to Olle J. Lorehn in trust "according to the terms and conditions of that certain Trust Indenture of even date." Appellant maintains there was, in fact, never such a trust indenture. (At any rate, such a trust indenture was not before the trial court and is not a part of the appellate record.) Subsequently, in October, 1967, Olle Lorehn, as trustee, sold two tracts of the original acreage totalling slightly over 38 acres, leaving the 19.414 acres involved in this controversy.

In April 1983 Olle Lorehn and the six above-named children, the beneficiaries of the trust, entered into a "Trusteeship Agreement." The agreement recited the establishment of the original trust and the previous transfer of the two tracts by Olle Lorehn as trustee. It then recited that each of the beneficiaries have now "reached their majority," that the sole asset of the trust, being the 19.414 acres, is "their sole and separate property," that "Olle J. Lorehn wishes to relinquish the responsibility of being trustee, but that the beneficiaries wish the Trust to continue to grow." The agreement then provides that "all beneficiaries wish David Lorehn to take over as Trustee of their interest in any and all Trust Property with the proviso that he counsel with his father, Edmond L. Lorehn for the first five years of this trusteeship agreement." The agreement then appointed David Lorehn Trustee of the Lorehn Children Trust and gave to him a power of attorney with "full power and authority for all and every act and thing whatsoever requisite and necessary to be done in and about the premises as fully and to all intents and purposes as we might or could do if personally present." The agreement then concludes with the following paragraph which is the basis for this controversy:

> The only limitation of this general power of attorney is that David Lorehn, as Trustee must have the counter-signature of our father, Edmond L. Lorehn on any instrument creating a mortgage on any properties now or to be included in this tract, or on any deed, contract for deed or other sale of real property now or to be included in this Trust.

In accordance with the agreement, Olle Lorehn, by special warranty deed, transferred the trust property to David in October, 1983.

On December 24, 1984, David Lorehn, Trustee, executed a deed of trust transferring the subject property to M. Tim Tauton, Trustee, to secure the payment of a note in the amount of $71,000 of even date, executed by Edmond L. Lorehn and wife Dorothy in favor of the Farmers State Bank of Brookshire. Each of these instruments was before the trial court and are in the record before us. David was the only signatory to the deed of trust and Edmond L. Lorehn and Dorothy Lorehn were the only signatories to the promissory note.

Edmond and Dorothy defaulted on the note; the trustee for the bank posted the property for sale, and five of the beneficiaries of the trust (David did not join) sought and obtained the temporary injunction resulting in this appeal.

In their first point of error appellants contend the trial judge abused his discretion in granting the temporary injunction

because he disregarded "case law that loan documents and other contracts relating to a single transaction should be read together." There was no request for findings of fact nor were any made.

In addition to the documentary evidence recited above, both David and his father, Edmond, testified. David acknowledged his father asked him, as trustee, to pledge the trust property as collateral for a loan his father was seeking from the bank and that he and his father were both present when "all the documents were signed." Concerning the mortgaging of the trust property, Edmond testified:

A. ... The trust agreement, as you can see, was drawn so that David had full control to do what he wished to do, with the exception of pledging the property which required my approval.

Q. Did you approve of his pledging the property for this loan.

A. I did.

He further testified he was at the closing when the papers were signed and that he "signed everything the lawyer asked me to sign," and that if the lawyer had asked him to sign the deed of trust he would have done so.

Appellees argue the trusteeship agreement is a valid instrument in accordance with the Texas Trust Act and that because the bank was aware of the trust agreement and the inclusive co-signature requirements, the bank had the duty to comply with the terms of this instrument. We do not believe we need to address this issue.

■ The general rule is that separate instruments or contracts executed at the same time, for the same purpose and in the course of the same transaction are to be considered as one instrument, and are to be read and construed together. *Jones v. Kelley*, 614 S.W.2d 95 (Tex.1981). In that case the court looked to four separate documents in order to determine whether the description of land satisfied the statute of frauds and whether specific performance should be ordered. There, the court stated:

Looking at the complete transaction it was the clear intent of both the Joneses and the Kelleys that the execution of the four documents was for the primary purpose of conveying all the subject property to the Kelleys. The property was listed by the real estate agent as one tract and the Kelleys intended to purchase the entire tract. Financing through the Veterans Land Board was only a means of achieving this objective. The Veterans Land Board was only interested in aiding Kelley, a veteran, in his purchase of the property and not in any acquisition of its own. The Joneses and Mr. Kelley executed the Veterans Land Board documents at the Joneses' daughter's home in Sheldon. Both of the earnest money contracts refer to the Veterans Land Board. The execution of four documents in this instance was only a means of accomplishing the singular and primary purpose of conveying the Joneses' entire tract to the Kelleys.

■ We believe this reasoning applies here. Looking at the complete transaction, it was clear that the beneficiaries of the trust desired that for five years their trustee have the counsel of their father concerning the trust property and that the trustee could not sell or create a mortgage on the trust property without "the counter-signature of our father." The documents, read together, and the oral testimony show these trust provisions were satisfied. The father was not only counselled by the trustee; it was at the father's request that the property was mortgaged. While it is true the father did not sign the deed of trust, he did sign the promissory note that recites it is secured by the subject property, giving the exact legal description as contained in the deed of trust. We reject appellees' contention that the absence of their father's signature to the deed of trust voids this transaction.

We hold that the "Trusteeship Agreement," the promissory note and the deed of trust securing same must be read together and that when so read together, they permit the trustee to conduct the sale. Ac-

cordingly, the trial court abused its discretion in issuing the temporary injunction enjoining the trustee's sale.

The order granting the temporary injunction is reversed and the temporary injunction is hereby set aside.