**Ex parte Jim M. CONOLY.**

No. 05–87–00077–CV.

Court of Appeals of Texas, Dallas.

May 1, 1987.

Lee Roland, Garland, for appellant.

William Bret, III, Dallas, for appellee.

Before WHITHAM, STEWART and McCRAW, JJ.

STEWART, Justice.

Relator Jim M. Conoly ("Jim") applied for a writ of habeas corpus. For the reasons given below, we deny the application.

Jim and Brenda J. Conoly ("Brenda") were granted a divorce by the 254th Judicial District Court of Dallas County (the "254th Court"). The divorce decree ordered Jim to pay $100 per month, through the Dallas County Child Support office, for child support. On September 9, 1986, Brenda filed a motion for contempt, alleging that Jim had not made the child support payments as ordered. On January 12, 1987, the 254th Court held a hearing on Brenda's motion. It found Jim in contempt, and signed two orders of contempt and for commitment to county jail on the same date. The first order held Jim in contempt for the child support arrearages accrued up to September 9, the day that Brenda filed her motion for contempt. The second order held him in contempt for the

child support arrearages accrued after September 9, but before January 12, the date of the hearing.

Jim argues first that the contempt orders are void because neither one specifies the place where Jim failed to comply with the divorce decree. Section 14.33 of the Texas Family Code requires an enforcement order to state "the time, date, and place" of every occasion on which an alleged contemner failed to comply with the provisions of an order, decree, or judgment for which enforcement is sought. Because the contempt orders did not state the "place" at which Jim failed to pay the ordered child support, Jim argues that they do not meet the statutory requirements of section 14.-33. Relying on *Ex parte Durham*, 708 S.W.2d 536, 538 (Tex.App.—Dallas 1986, orig. proceeding), Jim concludes that the commitment orders are therefore void.

 Although we addressed this point generally in *Durham*, a resolution of the precise issue that Jim raises was not necessary to our disposition of that case. Thus, we address that issue directly now. Under the divorce decree in the instant case, Jim was ordered to make all payments through the Dallas County Child Support Office. That provision is set out in Brenda's motion for contempt, and the contempt orders refer to the decree by date and by volume and page, where it appears of record. We hold that the place where *all* payments were to be made is sufficiently incorporated by reference in the enforcement order. *See Ex parte Parrott*, 723 S.W.2d 342, 345 (Tex.App.—Fort Worth 1987, orig. proceeding). We further hold that, when there is but one place designated in the support order for the payment of all sums at issue, the place at which a respondent to a contempt motion failed to pay need be alleged only once unless "place" is a controverted issue. Here, there is no dispute involving the "place" where Jim was required to make all of his child support payments. Under the facts of this case, we hold that the omission of the place of *each* failure to pay does not render the enforcement order in this case so ambiguous as to be unenforceable. *Parrott*, 723 S.W.2d at 345.

Jim next argues that the order holding him in contempt for support arrearages accrued up to September 9, 1986 (the date on which Brenda filed her motion for contempt), is void, because it does not specify exactly the date of each and any occasion on which Jim failed to make support payments. This contempt order sets out thirty-six dates on which the 254th Court found that Jim failed to make payments of $100 each. Therefore, the total arrearage would appear to be $3,600. Yet the contempt order finds that Jim was in arrears in the lesser amount of $3,109. Jim contends that, because there is a discrepancy between the findings of each individual date of non-payment and the total arrearage found, the commitment order is void.

We disagree. The purpose of an enforcement order is to notify the contemner of how he has violated the provisions for which enforcement is sought and how he can purge himself of contempt, to notify the sheriff accordingly so that he may do his duty, and to provide sufficient information for adequate review. The contempt order "must contain specific findings so that the contemner will be fully apprised of his alleged act of misconduct so that he may overcome by proof, if any is available, the presumption of the validity of the order." *Ex parte Hardy*, 531 S.W.2d 895, 896 (Tex.Civ.App.—Dallas 1975, orig. proceeding). In the instant case, the parties agree that Jim failed to make the payments on the dates found in the contempt order, but that he had in fact made some payments, on some occasions, for which the 254th Court gave him credit. The credit accounts for the discrepancy between the arrearage actually found and the total of the thirty-six defaulted payment dates.

 The contempt order sets forth the dates on which Jim failed to make payments and sets forth the 254th Court's finding that the total arrearage was $3,109. Jim does not attack this finding. That Jim made some later payments of child support does not excuse the fact that he did not pay on the dates on which the payments were ordered due. *See Ex parte Boyle*, 545 S.W.2d 25, 27 (Tex.Civ.App.—Houston [1st

Dist.] 1976, orig. proceeding) (fact that alleged contemner paid all support arrearages before hearing, but after motion for contempt, did not render commitment order void). Because Jim did not pay child support on any of the thirty-six dates specified, he was in contempt of court. Because the 254th Court found the arrearage specifically to be $3,109, the commitment order is clear as to what Jim must do to purge himself. Jim's complaint of the discrepancy between the amounts found not to have been paid on each of the thirty-six dates and the total amount of arrearages found is no more than a complaint that the 254th Court credited him with payments that he did make; therefore, he was not harmed.

We should not be understood to approve, in all cases, a discrepancy between the total amounts found not to have been paid and the arrearage for which a respondent is held in contempt. We hold merely that, under the facts and circumstances of this case, the dates of each occasion on which Jim violated the order of child support were proved, and the discrepancy between the amount of arrearage that accrued on those dates and the amount for which Jim was held in contempt was satisfactorily accounted for.

We hold that this contempt order gives Jim sufficient notice of his arrearage in the amount of $3,109 and of the requirement that he pay that amount (and certain costs) to purge himself of contempt; that it gives the sheriff adequate notice that, when Jim has paid that amount in arrearage (and the costs), he will have purged himself so that he may be released from custody; and that it gives adequate information for our review of the points of error urged.

Finally, Jim argues that the second order holding him in contempt for failure to pay child support accruing after Brenda's motion but before the hearing is void for lack of adequate notice of these violations. We agree.

Brenda's motion recites, in relevant part:

[Brenda] believes, based on the conduct of [Jim] as alleged above that [Jim] will continue to disobey the order of [the 254th Court], and [Brenda] requests [Jim] be held in contempt for any further failure to make child-support payments from the date of filing this motion to the date of the hearing on this motion.

See, 2 STATE BAR OF TEXAS, TEXAS FAMILY LAW PRACTICE MANUAL 13.-28, para. 3 (Supp.1986) (suggesting inclusion of form paragraph identical to above in motions for contempt).

■ The contents of a motion to enforce child support, however, are controlled by section 14.31(b)(1) of the Family Code. That section provides in pertinent part:

(b) Pleading. (1) Contents of Motion.

\* \* \* \* \* \*

The motion shall set out specifically and with particularity the provisions of the order, decree, or judgment sought to be enforced and, in separate counts, the time, date, and place of each occasion upon which the respondent has not complied with the order, the manner of the noncompliance, and the relief sought by the movant.

The purpose of this section is to provide a respondent with proper notice of the allegations of contempt for which he must prepare a defense at the hearing on the motion. *See Ex parte Almendarez*, 621 S.W.2d 664, 667 (Tex.Civ.App.—Fort Worth 1981, orig. proceeding); *see also Ex parte Deckert*, 559 S.W.2d 847, 849 (Tex.Civ.App. —Houston [1st Dist.] 1977, orig. proceeding) (charge that respondent did not comply with order of child support insufficient as specific charge of failure to make child support payments). Yet the quoted paragraph in Brenda's motion recites no specific dates, after the date of the motion itself, on which she anticipated Jim would fail to make payments for child support. We hold, therefore, that the quoted paragraph is an insufficient allegation on which to base a finding of contempt.

■ There is, moreover, an additional reason that the paragraph is insufficient. Section 14.31 requires the motion to recite specific details "of each occasion upon which the respondent *has not complied* with the order" for which enforcement is sought. TEX.FAM.CODE ANN. sec. 14.-

31(b)(1) (Vernon 1986) (emphasis added). The use of the perfect tense in prescribing the contents of an enforcement motion indicates that the legislature intended such a motion to include only those violations that have already occurred at the time that the motion is filed. There is nothing in the Family Code that we find authorizing a movant to allege, in an enforcement motion, that the respondent is anticipated to commit future violations of the order for which enforcement is sought to occur. A child support order can be enforced by contempt only to the extent authorized by statute. *See In re Cobble*, 592 S.W.2d 46, 49 (Tex.Civ.App.—Tyler 1979, orig. proceeding) ("the decree is enforceable by contempt only to the extent authorized by statute; and that part of the decree which goes beyond the authorization of the statutes is enforceable only by the ordinary processes of law"); *see also Ex parte Hatch*, 410 S.W.2d 773, 776 (Tex.1967). We conclude, therefore, that a court may enforce, by contempt, only those violations that have occurred at the time that a motion for contempt is filed.

We hold, therefore, that the second contempt order is void for two reasons. First, it contains findings that certain violations of the child support order occurred, and those findings are not based upon any specific allegations contained within the motion, as required by section 14.31(b)(1) of the Family Code. Second, those violations found to have occurred were violations that, at the time that Brenda filed her motion for enforcement, could have been only anticipated as occurring in the future, and the legislature has not authorized the remedy of contempt for such violations.

Nevertheless, that the second contempt order is void does not affect the validity of the first contempt order. *Ex parte Rine*, 603 S.W.2d 268, 272 (Tex.Civ.App.—Waco 1980, orig. proceeding); *Ex parte Williams*, 469 S.W.2d 449, 452–53 (Tex.Civ. App.—Beaumont 1971, orig. proceeding). *Compare Ex parte Almendarez*, 621 S.W.2d 664, 667 (Tex.Civ.App.—Fort Worth 1981, orig. proceeding) (reviewing court may deduct amount of delinquency for which insufficient notice was given from total amount of arrearage, to determine amount for which proper notice was given, and contemner must pay that amount in order to purge himself), *with Almendarez*, 621 S.W.2d at 668 (on rehearing) (when reviewing court has no means of apportioning single sentence of punitive confinement into that portion validly imposed and that portion in validly imposed, entire sentence of punitive confinement must fall).

In the instant case, the first order holding Jim in contempt for failing to make payments accruing up to the date of Brenda's motion imposed a punitive sentence of seventy-two hours; the second order, for the arrearages accruing after the filing of the motion, does likewise. We need not decide the validity of either sentence or whether they were imposed concurrently or consecutively: Jim's application for writ of habeas corpus was filed eleven days after he was originally taken into confinement pursuant to the contempt judgments. The question of the validity of the punitive sentences for contempt is therefore moot.

The only live issue is the amount that Jim must pay in order to purge himself of contempt. The first contempt order sets forth the amount of child support arrearage accrued before Brenda filed her motion; the second contempt order purports to set forth only the amount of arrearage accruing after the filing date of the motion, but before the hearing. There is no difficulty in determining the amount that Jim must pay to purge himself solely for the amount of arrearage accrued by the time that Brenda filed her motion; it is the amount of $3,109 given in the first order. Accordingly, we hold that the invalidity of the second contempt order does not taint the validity of the first.

Relator Jim M. Conoly is remanded to the custody of the sheriff of Dallas County until he purges himself of contempt by paying the amount of $3,109 in child support arrearage, $1,625 in attorney's fees assessed as costs, and $64 in costs, for a total amount of $4,798, or until further order of the 254th Judicial District Court of

Dallas County. His application for writ of habeas corpus is denied.

WHITHAM, J., dissenting.

WHITHAM, Justice, dissenting.

I respectfully dissent. For the reasons given below, I would hold that the confinement of relator Jim M. Conoly ("Jim") is void in its entirety and would order him discharged from custody.

On September 9, 1986, Brenda J. Conoly ("Brenda") filed a motion for contempt, alleging that her ex-husband, Jim, had failed to make certain payments of child support, in violation of certain provisions in the decree granting Brenda and Jim a divorce. The motion also alleged that Brenda believed that Jim would continue to violate the child support provisions of the divorce decree in the future.

On January 12, 1987, after a hearing on Brenda's motion for contempt, the trial court signed two enforcement orders. One held Jim in contempt for not paying child support up to the date on which Brenda filed her motion. That order found the child support arrearage, as of that date (September 9), to be $3,109, and ordered Jim to pay that amount (along with costs and attorney's fees assessed as costs) in order to purge himself of contempt. The second enforcement order also held Jim in contempt for not paying child support that had accrued during the time after Brenda had prepared her motion for contempt, but before the date of the hearing. The second order found the arrearage accruing during that period to be $600, and ordered Jim to pay that additional amount to purge himself.

We thus have, purportedly, two contempt judgments, executed simultaneously, which, taken together, adjudge Jim in contempt for the entire amount of unpaid child support that had accrued by the date of the hearing (January 12) on Brenda's motion for contempt. Because I conclude that there is, in fact, only one contempt judgment, I would hold both enforcement orders void and discharge Jim from custody.

The two orders signed by the trial court on January 12 resulted from a single motion that Brenda filed, from a single hearing conducted on that motion, and from a single adjudication by the trial court. A judgment, like any other written instrument, is to be construed as a whole. *See Rodgers v. Williamson*, 489 S.W.2d 558, 560 (Tex.1973) (stipulation of parties contained in separate instrument held incorporated into judgment, in manner of incorporation of documents generally). Separate instruments executed at the same time, for the same purpose, and in the course of the same transaction, are to be considered as one instrument, and are to be read and construed together. *Jones v. Kelley*, 614 S.W.2d 95, 98 (Tex.1981); *Wasaff v. Lipscomb*, 713 S.W.2d 730, 732 (Tex.App.—Houston [14th Dist.] 1986, no writ). It follows that the two orders of January 12, 1987, are to be construed as one instrument—as one judgment.

I also noted that reducing a judgment to writing is merely a ministerial act by which an enduring evidence of the judicial act is afforded. *Stephens v. Henry S. Miller Co.*, 667 S.W.2d 250, 252 (Tex.App.—Dallas 1984, writ dism'd by agreement); *see also Gholson v. Thorn*, 597 S.W.2d 568, 571 (Tex.Civ.App.—Dallas 1980, no writ). In this case, the trial court made only one judicial determination—that Jim had defaulted in the support payments that he was ordered to make, up to the date of the hearing. To attribute any significance to the separate instruments by which the trial court chose to document this one act of adjudication is to elevate form over substance, to emphasize the ministerial act of reducing a judgment to writing over the actual judicial act itself.

Finally, there can be only one final judgment entered in any cause. *Crabtree v. Crabtree*, 627 S.W.2d 486, 487 (Tex.App.—Corpus Christi 1981, no writ); TEX.R. CIV.P. 301. I recognize that a separate count of contempt might lie for each separate occasion on which Jim failed to make the ordered support payments, and that a determination that Jim is in contempt for failing to make past due support payments does not bar later action for contempt if he

should fail to make further payments in the future. In this case, however, a single motion for contempt is involved, with a single hearing on the motion. There is therefore only a single proceeding, and it follows that only a single judgment can result, no matter how many different instruments are used to reduce it to writing.

I conclude, therefore, that the two purportedly separate orders of January 12, 1987, reflect a single, inseverable judgment. It seems also clear that, in order to purge himself of contempt and be released, Jim must pay a total of $3,709—the arrearage of $3,109 required to be paid by the first enforcement order, and the arrearage of $600 required to be paid by the second. In short, the one judgment requires that Jim purge himself by paying one amount.

I agree with the majority that the contempt order requiring Jim to purge himself by paying arrearages that had not accrued as of the date of Brenda's motion is void; for the reasons stated above, I cannot agree that that order does not affect the validity of the other contempt order. Because there is really only one judgment (which requires Jim to pay the entire amount of arrearage accrued on the hearing date), the judgment in its entirety must be either valid or void. In *Ex parte Davila*, 718 S.W.2d 281 (Tex.1986), the Supreme Court of Texas held that, when a contemner was required to pay a specified lump sum to purge himself of contempt, and when that lump sum "plainly include[d] amounts which could not be the basis of a contempt finding at the time of the hearing, the entire judgment is tainted." 718 S.W.2d at 282. *See also Ex parte Oebel*, 635 S.W.2d 454, 456 (Tex.App.—San Antonio 1982, orig. proceeding). I would conclude, therefore, that the contempt judgment, and Jim's confinement pursuant to that contempt judgment, is void in its entirety.

I would therefore decline to deduct an amount, invalidly ordered, from the total amount of the purgative payment imposed by the single contempt judgment. In my view, any amount of the total purgative payment that is void cannot be severed, as the majority holds, from the entire amount that a contemner is ordered to pay to purge himself. Because this case involves only one judgment, and because a portion of that judgment is indisputedly void, the entire judgment of contempt should fall.

Accordingly, I respectfully dissent. I would grant the application for writ of habeas corpus by relator Jim M. Conoly and order him unconditionally discharged from the custody of the sheriff of Dallas County.