Opinion issued March 18, 2008







 

 






In The

Court of Appeals

For The

First District of Texas






NO. 01-07-00440-CV






IN RE JOSEPH THOMAS, Relator






Original Proceeding on Petition for Writ of Habeas Corpus






MEMORANDUM OPINION


 Relator, Joseph Thomas, requests habeas corpus relief. He does not assert that
he is physically confined, but rather, that the trial court has restrained his liberty
pursuant to a commitment order the court signed on July 19, 2005, (1) a contempt order
on July 26, 2005, and an order suspending enforcement of his commitment on August
3, 2005. Thomas requests that we declare these orders void and permanently
discharge him from any further legal restraint. The real party in interest, Thomas's
former spouse, Nicole Lovejoy, did not respond to Thomas's petition. We deny
habeas corpus relief.

Factual Background

 In October 2003, the trial court issued an amended final divorce decree,
appointing Thomas and Nicole as managing conservators of their child, C.T. In the
decree, Thomas determines C.T.'s primary residence. The decree also provides that
Nicole has weekly possession of C.T. on Wednesdays from 6:00 p.m. to 8:00 p.m.
during the school year. The original decree requires that either parent surrender the
child to the other parent at the beginning of any possession period:


 1. Surrender of Child by JOSEPH ANTHONY THOMAS. IT
IS ORDERED that JOSEPH ANTHONY THOMAS shall
surrender the child to NICOLE D. LOVEJOY-THOMAS
at the beginning of each period of possession of JOSEPH
ANTHONY THOMAS and said surrender shall take place
at the primary residence of the child, unless it is specified
herein that NICOLE D. LOVEJOY-THOMAS has the right
to pick up the child at some other place of destination;


This paragraph in the decree contains a scrivener's error. It states that Thomas must
surrender the child at the beginning of Thomas's period of possession. It should read
that Thomas surrender possession of the child to Nicole at the beginning of Nicole's
period of possession. In an order dated September 30, 2004, entitled "Clarification
Order," the trial court clarified this language, ordering that Thomas surrender the
child at the beginning of Nicole's period of possession. In the clarification order, the
trial court also provides that all provisions of the decree "not clarified in this order
shall remain in full force and effect."

 In June 2005, Nicole moved for enforcement of the decree by contempt,
charging that, in 32 instances, Thomas violated either the decree or the clarification
order. In her motion for enforcement, Nicole includes the possession and access
provisions of the decree. Nicole also recites the access and possession clarification
language from the clarification order. Nicole requests that the trial court sentence
Thomas to a period of confinement for each of the 32 alleged violations. The motion
for enforcement demonstrates that the parties have been before the trial court on
similar matters in the past, as some of the alleged violations include a failure to
surrender the child for court-ordered "make-up time."

 On July 19, 2005, the trial court heard Nicole's enforcement motion, and
signed a commitment order, in which it found Thomas guilty of contempt because "he
has failed and refused to surrender the child in violation of this Court's Orders . . . as
per violations #1 through #32 in Movant's Motion for Enforcement." The trial court
sentenced Thomas to 179 days of confinement for each count, to run concurrently. 
The trial court also awarded Nicole's attorney a judgment for $2,000 for attorney's
fees. Pursuant to the July 19, 2005 commitment order, the Harris County Sheriff
committed Thomas into its custody.

 The trial court did not sign a contempt order until one week later, on July 26. 
The contempt order sets forth the provisions of the decree and the clarification orders
for which Nicole sought enforcement, the 32 ways in which the trial court found
Thomas had violated those orders, the trial court's finding that Thomas was in
contempt for each of the 32 violations, and the 179-day sentence for each violation,
to run concurrently. The trial court included the award against Thomas for $2,000
attorney's fees, expenses, and costs.

 The same day, the trial court held a hearing it referred to as a "jail review." 
After that hearing, on August 3, 2005, the trial court ordered Thomas's commitment
suspended, and placed him on community supervision for 60 months with the
following terms and conditions: (1) payment of $139 in costs to Nicole's attorney,
(2) payment of $2,000 attorney's fees to Nicole's attorney in monthly installments
of $300 per month starting September 1, 2005, and continuing each month until paid
in full; (3) a report to the community supervision officer (CSO) in the Harris County
Domestic Relations Office on July 26, 2005; (4) permission to the CSO to visit
Thomas in his home or elsewhere as set out in the conditions of the Harris County
Domestic Relations Office; (5) counseling and parenting classes as directed by the
Harris County Domestic Relations Office; (6) payment of a community supervision
fee of $25 per month, commencing September 1, 2005, and on the first of each month
thereafter during the duration of his community supervision; (7) counseling as
directed by the CSO and in other matters that may have contributed to the violation
of the orders of the trial court, as instructed by the CSO, regardless whether said
counseling has been expressly ordered by the trial court; and (8) allowance to Nicole
of "additional periods of possession for the denial of court ordered possession or
access as scheduled by the CSO and mandated by Amicus Attorney Ramos." In
seeking relief from the trial court's orders,Thomas presents six issues challenging the
validity of his restraint. 

Standard of Review

A habeas corpus petition is a collateral attack on a judgment, the purpose of
which is not to determine the final guilt or innocence of the relator but to ascertain
whether the relator has been confined unlawfully. Ex parte Gordon, 584 S.W.2d 686,
688 (Tex. 1979). The presumption is that the order is valid. In re Turner, 177
S.W.3d 284, 288 (Tex. App.--Houston [1st Dist.] 2005, orig. proceeding) (citing Ex
parte Occhipenti, 796 S.W.2d 805, 809 (Tex. App.--Houston [1st Dist.] 1990, orig.
proceeding)). We issue a writ of habeas corpus if a trial court's contempt order is
beyond the court's power or the court did not afford the relator due process of law. 
Turner, 166 S.W.3d at 288 (citing In re Henry, 154 S.W.3d 594, 596 (Tex. 2005)). 
The relator bears the burden to show that he is entitled to relief. Turner, 177 S.W.3d
at 288 (citing Occhipenti, 796 S.W.2d at 808-09).

Analysis

A. Validity of the August 3, 2005 Order


Thomas first contends that the August 3 order suspending his commitment to
jail is invalid because it does not contain the provisions of the trial court's prior order
sought to be enforced, his contemptuous acts or omissions, the manner in which his
acts constitute non-compliance with the order sought to be enforced, the dates on
which he is alleged to have perpetrated these contemptuous acts or omissions, and the
complete relief granted by the trial court.

Thomas treats the suspension of commitment order as an order of contempt, or,
as the Legislature refers to it in the Texas Family Code, an"enforcement order," but
the two are different. See Tex. Fam. Code Ann. § 157.166(a),(b) (Vernon 2002). 
An enforcement order must contain the information that Thomas complains is absent. 
See id. But, a suspension of commitment order or, as the Legislature refers to it, a
"probation of contempt order" presupposes a finding of contempt. See Tex. Fam.
Code Ann. § 157.165 (Vernon 2002). Thus, a party seeking habeas relief based upon
due process complaints, such as those made here by Thomas, must direct them at the
enforcement order that confines the party, not at the order suspending such
confinement.

Thomas further asserts that the conditions in the suspension of commitment
order are ambiguous. Specifically, Thomas complains that the order requires him to
obtain counseling, but not any particular type; that the order neglects to state the place
he is to pay the community supervision fee; and it is unspecific as to additional
periods of possession to allow Nicole. Thomas argues that the trial court could
further restrain him under these or other ambiguous terms or conditions in the
probation order. The operative word is "could." Thomas does not complain in this
habeas proceeding that he is physically confined due to a breach of the conditions of
his probation, but instead complains of the imposition of these restrictions in the first
instance. Thomas does not indicate that he has sought relief from the trial court to
clarify any of the conditions that he contends are vague or ambiguous, or allege that
the trial court has found him to have violated any one of them. We decline to address
Thomas's complaints as to the suspension of commitment order because they are
unripe for consideration. See, e.g., In re Bourg, No. 01-07-00623-CV, 2007 Tex.
App. LEXIS 6977, at *10 (Tex. App.--Houston [1st Dist.] Aug. 27, 2007, orig.
proceeding) (mem. op.) (on basis of unripeness this court declined to address ground
for habeas corpus relief relative to order when relator was not currently confined
pursuant to that order); In re Flores, 01-06-00733-CV, 2006 Tex. App. LEXIS 9706,
at **2-3 (Tex. App.--Houston [1st Dist.], orig. proceeding) (mem. op.) (this court
declined to address relator's complaint that child support order was ambiguous and
void when trial court had not adjudicated relator to be in contempt of challenged
order).

Finally, Thomas asserts that the August 3 order contains inconsistent findings. 
Thomas asserts that the commitment order contains a money judgment of $2,000 in
attorney's fees against Thomas, whereas the August 3 suspension of commitment
order makes Thomas's payment of the $2,000 attorney's fees plus the payment of an
additional $139.00 in costs a condition of the suspension of commitment. We hold
that the trial court was within its discretion to include the payment of court costs as
a condition of suspending the enforcement of its commitment order. See, Ex parte
Lee, 568 S.W.2d 689, 690 (Tex. Civ. App.--Houston [1st Dist.] 1978, orig.
proceeding) (in enforcement order, trial court ordered Lee's confinement until he had
paid attorney's fees, plus costs, but then suspended the enforcement order, provided
Lee pay attorney's fees, plus costs by a date certain).

We overrule issue one and the part of issue four challenging the August 3, 2005
Suspension of Commitment Order.

B. July 19, 2005 Commitment Order

In issues two and three, Thomas complains that the July 19, 2005 commitment
order is void because the trial court signed it before the July 26, 2005 enforcement
order, and it is not sufficiently specific. Because Thomas is no longer confined
pursuant to the July 19, 2005 commitment order, we dismiss issues two and three as
moot. See, e.g., Ex parte McKenzie, 909 S.W.2d 502, 503 (Tex. 1995) (when
McKenzie was no longer confined under order he challenged, supreme court ruled
challenge of order to be moot).

C. July 26, 2005 Enforcement Order

In issue four, Thomas asserts that the July 26, 2005 enforcement order is not
sufficiently specific because it does not enumerate which of the provisions of the
October 30, 2003 divorce decree and the September 30, 2004 clarification order
correspond to the 32 violations the trial court found, and that the enforcement order
is not specific as to the manner of Thomas's non-compliance. Because each of these
32 violations carries its own 179-day sentence, if we determine the trial court,
through its order, sufficiently put Thomas on notice of one of the provisions of the
order to which one of the stated violations corresponds, the enforcement order is
enforceable against Thomas for 179 days of confinement. See, Turner, 177 S.W.3d
284 at 288 (when in an enforcement order trial court finds multiple instances of
contempt and separately assesses a separate punishment for each instance, if any
sentence is valid, it will be enforced).

An enforcement order must include in ordinary and concise language the
provisions of the order for which enforcement was requested. Tex. Fam. Code Ann.
§ 157.166(a)(1) (Vernon 2002).

 'The purpose of an enforcement order is to notify the
contemner of how he has violated the provisions for which
enforcement is sought and . . . to provide sufficient
information for an adequate review.' Ex parte Conoly, 732
S.W.2d 695, 697 (Tex. App.--Dallas 1987, orig.
proceeding). A contempt order is insufficient if its
interpretation requires inferences or conclusions about
which reasonable persons might differ. In re Houston, 92
S.W.3d 870, 877 (Tex. App.--Houston [14th Dist.] 2002,
orig. proceeding).


Turner, 177 S.W.3d 284 at 289.

 Here, in the enforcement order, the trial court stated violation number 18 as
follows:

 On February 16, 2005, [Nicole] was exercising her Wednesday evening
visitation from 6:00 p.m. to 8:00 p.m., during the school year, [sic] as
[Nicole] drove up to the house, Joseph Anthony Thomas said [Nicole]
no longer had visitation with Christopher (2) and he was not sending him. 
Joseph Anthony Thomas violated the Court's order by not surrendering
the child to [Nicole] as ordered. 


On pages 1-2 of the July 26, 2005 enforcement order, the trial court states:


 Findings

 The Court finds that [Thomas] is guilty of separate violations of
the order . . . signed on October 30, 2003 that appears in the minutes of
this Court, and states in relevant part as follows:

 

 . . . IT IS ORDERED that [Nicole] shall have possession of and access
to the . . . child as follows: . . .

 

 3. WEDNESDAYS. On Wednesdays of each week during the regular
school term beginning at 6:00 o'clock p.m. and ending at 8:00 o'clock
p.m.


In the enforcement order, the trial court does not directly tie the Wednesday
possession provision contained in its October 30, 2003 decree to its enforcement
order. Nevertheless, the enforcement order provides Thomas with adequate notice
inasmuch as the Wednesday possession provision appears both in the October 30,
2003 decree and in the motion for enforcement. Nicole notified Thomas of the
specific provision by quoting it, verbatim from the decree. Thus, interpreting the trial
court's finding does not require an inference or conclusion about which reasonable
persons might differ. Turner, 177 S.W.3d 289 at 290. The decree's Wednesday
possession order is the only prior court order implicated by violation 18. See id.
(holding enforcement order that only referred generally to prior order violated gave
sufficient notice of provisions of decree that trial court had found violated when
violations as stated implicated the only decree provisions from which the violations
could have arisen). Additionally, the record does not reveal any actual difficulty or
confusion on Thomas's part in understanding which provisions of the trial court's
prior orders he had violated. Id. We further conclude that the trial court's
enforcement order is sufficient to provide information for habeas corpus review of
Thomas's grounds for relief. See id. We overrule issue four.

 D. The Decree and Clarification Orders and Enforcement

 In issue five, Thomas asserts that the decree and the clarification order are
ambiguous. Concerning the decree and the clarification order, Thomas contrasts the
"surrender language" contained in the "General Terms and Conditions" portions of
the two orders. The decree provides the following:

 1. Surrender of Child by JOSEPH ANTHONY THOMAS. IT
IS ORDERED that JOSEPH ANTHONY THOMAS shall
surrender the child to NICOLE D. LOVEJOY-THOMAS
at the beginning of each period of possession of JOSEPH
ANTHONY THOMAS and said surrender shall take place
at the primary residence of the child, unless it is specified
herein that NICOLE D. LOVEJOY-THOMAS has the right
to pick up the child at some other place of destination;


(emphasis added) whereas the clarification order provides the following:

 1. Surrender of Child by JOSEPH ANTHONY THOMAS. IT
IS ORDERED that JOSEPH ANTHONY THOMAS shall
surrender the child to NICOLE D. LOVEJOY-THOMAS
at the beginning of each period of possession of NICOLE
D. LOVEJOY-THOMAS and said surrender shall take
place at the primary residence of the child, unless it is
specified herein that NICOLE D. LOVEJOY-THOMAS
has the right to pick up the child at some other place of
destination . . . . 


(emphasis added).

 Thomas acknowledges that the version of the surrender language in the decree
is a mistake, but asserts that because "no specific finding or specific order was ever
entered that voided the surrender language of the [decree] . . . the surrender language
of each are in effect . . . . [and] the surrender language is ambiguous and not specific
enough for contempt." We disagree. 

 The Family Code provides that on the motion of a party or on its own motion,
a court may clarify an order by rendering an order that is specific enough to be
enforced by contempt if it finds that an order rendered in a Title 5 (involving the
parent-child relationship) proceeding is not specific enough to be enforced by
contempt. Tex. Fam. Code Ann. § 157.421(a), (b) (Vernon 2002). Here, the trial
court found that the surrender order contained in October 30, 2003 decree was not
specific enough to be enforceable by contempt. In the clarification order, the trial
court "clarified" the decree's surrender order by stating that Thomas should surrender
the child to Nicole at the beginning of each of Nicole's periods of possession. 
"Clarify" means "to free of confusion" or "to make understandable." Merriam
Webster's Collegiat Dictionary 228 (11th ed. 2003). When a clarification order
"clarifies" an order, the newly stated order replaces the prior confusing order. On
page five of the clarification order, the trial court stated, "IT IS FURTHER
ORDERED that all provisions of the [decree] not clarified in this order shall remain
in full force and effect." The surrender order, as restated in the clarification order, is
in effect and is not ambiguous. We overrule issue five.

 In issue six, Thomas asserts that the motion for enforcement lacked specificity
as to which surrender order Nicole complains. When Nicole asserted that Thomas
"refused to surrender" their child, she referred to the surrender order as clarified in
the clarification order, as that order was then in effect. Thomas therefore had
adequate notice of the surrender violation alleged against him. We overrule issue six.



Conclusion

 We deny Thomas's request for habeas corpus relief.


 Jane Bland

 Justice


Panel consists of Chief Justice Radack and Justices Jennings and Bland.

1. Thomas elaborates that the restraint on his liberty includes a monthly
report to a Community Supervision Officer (CSO), access to the CSO to
visit him at Thomas's home or elsewhere, and a monthly community
supervision fee.
2. Such a statement could not have been based on the duration of the
possession and access provisions of the decree expiring as it provides
that said orders apply until Christopher becomes 18 and the decree states
his date of birth as October 1, 1990.