**Petition for Writ of Habeas Corpus Denied and Memorandum Opinion filed November 24, 2015.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-15-00895-CV

---

### IN RE KEVIN MATTHEW HALL, Relator

---

**ORIGINAL PROCEEDING**
**WRIT OF HABEAS CORPUS**
**308th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2010-63670**

---

## MEMORANDUM OPINION

On October 23, 2015, relator Kevin Matthew Hall filed a petition for writ of habeas corpus in this court. *See* Tex. Gov't Code Ann. § 22.221 (West 2004); *see also* Tex. R. App. P. 52. In the petition, relator asks this court to vacate an October 15, 2015 contempt and commitment order as void. We deny relator's petition for writ of habeas corpus.

## I. BACKGROUND

Relator is the father of a minor child. Relator and the child's mother ("Mother") were divorced on March 27, 2012. The trial court appointed the parties joint managing conservators of the child, with Mother having the exclusive right to designate the child's primary residence. On June 4, 2015, Mother filed an amended motion for enforcement and possession of and access, child support, passport provisions, and required information changes and a motion to confirm child-support arrearage. Mother alleged fifty-five violations of the final divorce decree and requested that relator be held in contempt, incarcerated, and fined for each violation and ordered to pay attorney's fees, expenses, and court costs.

On October 15, 2015, the trial court held a hearing and signed the contempt order that is the subject of this original proceeding. In the order, the trial court found relator in criminal contempt for five violations of the final divorce decree, all of which involved the failure to return the child to Mother's residence at the end of his periods of possession at 6:00 p.m. on Sunday. The trial court assessed punishment at 179 days' confinement in the Harris County Jail for each violation, and ordered the sentences to run concurrently. The trial court also awarded Mother $50,457.99 in child support, but this award was not part of the contempt order. On October 28, 2015, the trial court set bond and relator was released from the Harris County Jail upon payment.

## II. STANDARD OF REVIEW

The purpose of a habeas-corpus proceeding is not to determine the guilt or innocence of the relator, but only to determine whether the relator has been restrained unlawfully. *Ex parte Gordon*, 584 S.W.2d 686, 688 (Tex. 1979) (orig.

proceeding). A writ of habeas corpus will issue if the trial court's contempt order is void, either because the order is beyond the trial court's power or because the relator has not been afforded due process. *In re Henry*, 154 S.W.3d 594, 596 (2005) (orig. proceeding) (per curiam). We presume that the contempt order is valid. *In re Turner*, 177 S.W.3d 284, 288 (Tex. App.—Houston [1st Dist.] 2005, orig. proceeding). In a habeas-corpus action challenging confinement for contempt, the relator bears the burden of showing that the contempt order is void. *In re Coppock*, 277 S.W.3d 417, 418−19 (Tex. 2009) (orig. proceeding).

### III. ANALYSIS

### A. Restraint of Liberty

As an initial matter, Mother claims this court does not have jurisdiction over relator's petition for writ of habeas corpus because relator's liberty is not restrained in light of his release from jail after posting the bond set by the trial court. Mother is not correct. The restraint on relator's liberty is sufficient for this court to review his petition for writ of habeas corpus. *See Ex parte Williams*, 690 S.W.2d 243, 243, 244 (Tex. 1985) (orig. proceeding). Relator's incarceration is "not a speculative theory where the unfolding of events may render the controversy moot." *See id.* at 244. Relator's bond could be revoked at any time, resulting in his being reincarcerated.

### B. Notice of Violations of Final Divorce Decree

In his first issue, relator contends that neither the motion for enforcement nor the order of contempt adequately provided him notice of how or when he violated the divorce decree in accordance with due process.

Section 157.002 of the Texas Family Code, entitled "Contents of Motion," sets forth the required contents of a motion for enforcement, and provides, in relevant part:

(a) A motion for enforcement must, in ordinary and concise language:

(1) identify the provision of the order allegedly violated and sought to be enforced;

(2) state the manner of the respondent's alleged noncompliance;

(3) state the relief requested by the movant; and

(4) contain the signature of the movant or the movant's attorney.

* * *

(c) A motion for enforcement of the terms and conditions of conservatorship or possession of or access to a child must include the date, place, and, if applicable, the time of each occasion of the respondent's failure to comply with the order.

Tex. Fam. Code Ann. § 157.002(a), (c) (West 2014). The purpose of a motion for enforcement is to provide the alleged contemnor with proper notice of the allegations of contempt for which he should prepare a defense for the hearing on the motion. *Ex parte Conoly*, 732 S.W.2d 695, 698 (Tex. App.—Dallas 1987, orig. proceeding).

Section 157.166 of the Texas Family Code specifies the required contents of an enforcement order:

(a) An enforcement order must include:

(1) in ordinary and concise language the provisions of the order for which enforcement was requested;

4

(2) the acts or omissions that are the subject of the order;

(3) the manner of the respondent's noncompliance; and

(4) the relief granted by the court.

(b) If the order imposes incarceration or a fine for criminal contempt, an enforcement order must contain findings identifying, setting out, or incorporating by reference the provisions of the order for which enforcement was requested and the date of each occasion when the respondent's failure to comply with the order was found to constitute criminal contempt.

Tex. Fam. Code Ann. § 157.166(a), (b) (West 2014).

Relator asserts that the operative language in the motion and the order are susceptible to multiple interpretations regarding how, when, or whether relator violated the divorce decree. Mother's motion to enforce quotes the following from the divorce decree with respect to when relator has possession of the child:

1.    Weekends—

On weekends that occur during the regular school term, beginning at the time the child's school is regularly dismissed on the first, third, and fifth Friday of each month and ending at 6:00 P.M. on the following Sunday.

\*       \*       \*

2.    Return of the child by KEVIN MATTHEW HALL—KEVIN MATTHEW HALL is ORDERED to return the child to the residence of [Mother] at the end of each period of possession.

Mother alleged in her amended motion for enforcement that relator had violated the divorce decree by failing to return the child at the end of relator's period of possession at 6:00 p.m. on March 8, 2015, April 5, 2015, April 19, 2015,

5

May 3, 2015, and May 17, 2015. The contempt order tracked the language of the amended motion to enforce by including the provisions of the divorce decree that Mother alleged were violated and the specific dates on which Mother alleged that relator had violated those provisions.

Relator argues that it is unclear if the violations are alleged to have occurred on a Thursday or on a Sunday, during the child's school year, school holiday, or summer break or who was entitled to possession during these periods. To the contrary, the amended motion to enforce and the contempt order include the specific provision in the divorce decree setting forth relator's weekend visitation, "ending at 6:00 P.M. on the following Sunday." Mother alleged that relator had violated the specified provisions by not returning the child "at the end of his period of possession at 6:00 p.m.," but did not allege that relator violated any terms of the divorce decree in connection with relator's visitation during the child's summer or holiday breaks.

Relator further contends that the contempt order does not state the dates on which relator failed to comply with the divorce decree because the order does not provide details regarding when relator returned the child to Mother's residence. The violations occurred by relator's failure to return the child by 6:00 p.m. on Sunday. Alleging the specific time or date that relator returned the child after 6:00 p.m. on the Sunday of the weekend visitation would not change the fact that the violations occurred.

Relator also complains that the order does not state that any of the dates alleged were dates Mother was entitled to possession of child. The modified standard possession order in the divorce decree specifically set forth relator's

periods of visitation, including weekend visitation, with the child and provided that Mother "shall have the right of possession of the child at all other times not specifically designated in this Modified Standard Possession Order for [relator]." Relator's weekend visitations with the child end on Sundays at 6:00 p.m. Hence, Mother's possession began at 6:00 p.m. on Sundays when relator's weekend visitations ended. Therefore, it was not necessary for the trial court to state when Mother's possession commenced.

Relator further argues the motion and order do not state the manner of his noncompliance because the language does not specify whether relator was in noncompliance because he failed to return the child at the designated location or at the designated time. Mother specifically alleged, and the trial court unambiguously found, that relator did not return the child to Mother's residence at 6:00 p.m. on Sunday when weekend visitation ended. We overrule relator's first issue.

## C. Notice of the Right to a Jury Trial

In his second issue, relator contends that he did not receive due process because the trial court did not advise him of his right to a jury trial to which he claims he was entitled.

Contempt may be punished by six months in jail and a $500 fine for each separate violation. Tex. Gov't Code Ann. § 21.002(b). There is no absolute right to a jury trial in a criminal-contempt proceeding. *Muniz v. Hoffman*, 422 U.S. 454, 475−77 (1975). In criminal contempt, a contemnor is entitled to a jury trial if the offense is "serious." *Ex parte Werblud*, 536 S.W.2d 542, 546−47 (Tex. 1976) (orig. proceeding). Where the offense is punishable by imprisonment of not more

than six months, the offense is "petty" and there is no entitlement to a jury trial. *Id.* at 547. A serious charge results in imprisonment longer than six months; for a serious charge, the contemnor is entitled to a jury trial. *Id.* When the contemnor is sentenced to confinement for no more than six months for each of several acts, the punishment is serious if the sentences must be served consecutively so as to add up to more than six months. *In re Hammond*, 155 S.W.3d 222, 226 (Tex. App.—El Paso 2004, orig. proceeding).

Mother alleged fifty-five separate violations and requested that relator be held in contempt and jailed for 179 days and fined for each violation. Relator complains that Mother did not specify in her amended motion to enforce whether she was requesting that his sentence run concurrently or consecutively. Relator asserts that "possible" punishment imposed is one criterion used in determining whether the charge is serious or petty. Relator argues that the charge against him was serious because the possible jail sentence was more than six months because Mother did not specify whether the jail sentence for each violation should run concurrently or consecutively.

This court previously has rejected the same argument. *See In re Radmacher*, No. 14-08-00346-CV, 2008 WL 2261278 (Tex. App.—Houston [14th Dist.] May 23, 2008, orig. proceeding) (mem. op.). In *Radmacher*, the mother alleged five specific acts of noncompliance with a support order and requested that the relator be held in contempt and confined in jail for up to six months for each separate violation. *Id.* at *1. The trial court found the relator was in criminal contempt and ordered him to serve five concurrent 180-day jail sentences for each violation of the support order. *Id.*

We held that, although the relator's 180-day sentences would exceed six months' confinement if served consecutively, the offense was not serious because the trial court's order clearly specified that the periods of confinement were to run concurrently. *Id.* at *2. The relator, however, argued that under the Supreme Court of Texas's opinion in *In re Sproull*, 815 S.W.2d 250 (Tex. 1991) (orig. proceeding) (per curiam), he was entitled to a jury trial because the possible sentence was more than six months. *Id.* The high court previously had stated in *Werblud* that "[c]ases of criminal contempt, where the ***sentence actually imposed*** does not exceed six months imprisonment, are exempted from the requirements of a jury trial." 536 S.W.2d at 547 (emphasis added). This court did "not read *Sproull* as a departure from the *Werblud* standard." *Radmacher*, 2008 WL 2261278, at *2.

In *Radmacher*, we also distinguished *Sproull*, observing that the relator in *Sproull* was entitled to a jury trial because the contempt order imposed 136 consecutive sentences of sixty days, totaling 8,160 days of confinement. *Id.* (citing *Sproull*, 815 S.W.2d at 250). Because *Sproull* did not involve a fact pattern in which the possible punishment was serious, but the actual punishment was petty, "we decline[d] to read one statement in *Sproull* as an advisory opinion on a fact pattern not then before the Court." *Id.*

This court further observed in *Radmacher* that *Werblud* cited the United States Supreme Court's opinion in *Taylor v. Hays*, 418 U.S. 488 (1974). *Id.* In *Taylor*, the Supreme Court held that "contempt of court is a petty offense when the penalty ***actually imposed*** does not exceed six months or a longer penalty has not been expressly authorized by statute." *Id.* at 495 (emphasis added). Therefore,

9

eight six-month sentences, which were to run concurrently, "were . . . equivalent to a single sentence of sixth months," constituting a petty offense. *Id.* at 495−96. This court concluded that it was "doubtful" that "the Supreme Court of Texas intended to overrule *Werblud* or disagree with *Taylor* on a fact pattern that was not at issue in *Sproull*." *Radmacher*, 2008 WL 2261278, at *2.

In accordance with our prior opinion in *Radmacher*, we look to the sentence actually imposed to determine whether the charged offense is petty or serious. Although Mother alleged fifty-five separate violations of the divorce decree and requested that relator be sentenced to 179 days in jail for each violation, the trial court sentenced relator to five 179-day jail sentences to run concurrently. Therefore, relator's offense was petty, and he was not entitled to a jury trial. In the absence of the right to a jury trial, the trial court was not required to advise relator of any right to a jury trial.[1] We overrule relator's second issue.

## D. Willful Noncompliance with Underlying Final Divorce Decree

In the first part of his third issue, relator contends that Mother did not show that his noncompliance with the divorce decree was willful. A criminal-contempt conviction for violation of a court order requires proof beyond a reasonable doubt of: (1) a reasonably specific order; (2) a violation of the order; and (3) the willful intent to violate the order. *Ex parte Chambers*, 898 S.W.2d 257, 259 (Tex. 1995). "Noncompliance with an unambiguous order of which one has notice will

---

[1] In *In re Levingston*, this court, citing *Sproull*, stated that "[a] charge for which confinement may exceed six months is serious." 996 S.W.2d 936, 938 (Tex. App.—Houston [14th Dist.] 1999, orig. proceeding) (citing *Sproull*, 815 S.W.2d at 250). *Levingston* is distinguishable. We held in *Levingston* that relator was entitled to a jury trial because the trial court sentenced relator to jail for nine months—a serious offense. *Id.*

ordinarily raise an inference that the noncompliance was willful." *Id.* at 261. "The involuntary ability to comply with an order is a valid defense to criminal contempt, for one's noncompliance cannot have been willful if the failure to comply was involuntary." *Id.* It is the relator's burden to prove conclusively his inability to comply. *Id.*

Relator points to the provision of the divorce decree requiring the parties to give notice of a change of residence. Relator states that Mother did not update her residence with him, the Attorney General's Office, or the court, thereby depriving relator of the ability to comply with the divorce decree, e.g., failing to return the child to Mother's residence. According to relator, it was not until the day after the trial court signed the contempt order that Mother updated her address. Relator claims that, because he was not able to comply with the order, relator did not show that his noncompliance was intentional.

Relator does not refer to anything in the record that would demonstrate that he was unaware of any change in residence by Mother. Instead, relator testified that he did not return the child to Mother's residence at 6:00 p.m. on Sundays "because she had moved in the middle of the year to a place that was a lot farther [a]way that it was going to be very difficult for me to get the [child] back and I would drop him at school the first thing in the morning." Relator has failed to prove that his noncompliance with the divorce decree was not willful. We overrule the first part of relator's third issue.

## E. Child-Support Arrearages

Relator claims in the second part of his third issue that the underlying divorce decree relating to his child-support payments cannot serve as the basis for

11

contempt because it is vague and ambiguous. Specifically, relator complains that, although he is not "officially being held in contempt on the child support obligations," the trial court entered judgment against him for $50,457.99 in child support arrearages. Because relator has not been held in contempt for failing to comply with the child-support provision of the divorce decree, we do not address this argument in this habeas proceeding. We overrule the second part of relator's third issue.

## IV. CONCLUSION

Having overruled all of relator's issues, we deny his petition for writ of habeas corpus.


PER CURIAM

Panel consists of Chief Justice Frost and Justices Christopher and Donovan.