**Petition for Writ of Writ of Habeas Corpus Denied and Opinion filed September 6, 2013.**



In The

# Fourteenth Court of Appeals

### NO. 14-13-00327-CV

## IN RE JOANNE WILKIE (BROCHSTEIN) MANCHA, Relator

**ORIGINAL PROCEEDING**
**WRIT OF HABEAS CORPUS**
**312th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2008-45190**

## OPINION

On April 17, 2013, relator Joanne Wilkie (Brochstein) Mancha filed a petition for writ of habeas corpus seeking release from jail. *See* Tex. Gov't Code Ann. § 22.221(d); Tex. R. App. P. 52.

### Background

On January 25, 2011, the real party in interest ("Father") filed a Motion for Enforcement by Contempt of Possession and Access and Other Provisions of

Divorce Decree and Order to appear, a Petition to Modify Parent-Child Relationship, and an application for a Temporary Restraining Order with a request for a Temporary Orders hearing. Relator ("Mother") was the Respondent. Mother was alleged to have violated the parties' divorce decree by moving the children to San Antonio, Texas without permission from either Father or the court. Father sought appointment as the primary conservator with the exclusive right to determine the residence of the children, and child support from Mother.

On March 1, 2011, a hearing on the Motion for Contempt was held and Mother was found to be in contempt as to the alleged violations of impermissibly moving the children to another county as well as the failure to provide required health insurance information to Father. Mother was ordered to pay Father's attorney's fees of $2,000.00; payments were to be made at $100.00 per month on the 15th of each month until the total amount with a six percent interest rate had been paid in full. The fees were ordered to be paid directly to the attorney, and the order stated that the award of attorney's fees could be enforced by contempt in the same way as a child support judgment.

On December 9, 2011, the trial court signed an order in the modification suit appointing Mother and Father joint managing conservators with Father designated as the primary conservator with the exclusive right to receive child support for the children. Although the court did not order Mother to pay regular periodic support payments, the court ordered Mother to pay Father $281.00 per month as reimbursement for the cost of health insurance for the children, with payments to begin on January 1, 2012. If the cost of the health insurance premium changed, beginning on the first day of the next month from the date the premium actually

changed, Mother was ordered to begin paying the new amount; however, Mother could not be held in contempt until fifteen days after the earlier of either the date Father furnished proof of the new amount or the date Mother received proof of the new amount.

On December 21, 2011, Father provided notice of an increase in the health insurance premium to $292.00 per month. Mother was to begin making payments to Father in the amount of $292.00 per month, beginning January 1, 2012.

On July 18, 2012, Father filed a Motion for Enforcement by Contempt and Order to Appear alleging seven violations of Mother's failure to make any of the health insurance premium payments as ordered on December 9, 2011. The total arrearage alleged for non-payment of child support at the time of filing was $2,062.48, which included $2,044.00 of unpaid support plus interest of $18.48. Father requested that Mother be held in contempt for failure to pay the $2,000.00 plus interest that was awarded to his attorney. The total arrearage alleged for non-payment of attorney's fees was $1,308.35 which includes $1,200.00 of unpaid fees plus interest at the time of filing of $108.35.

The court heard the motion on March 5, 2013, found Mother in criminal contempt for two of the seven alleged, separately enumerated violations for failure to pay child support and eight of the sixteen alleged, separately enumerated violations for failure to pay the attorney's fees award. The trial court sentenced Mother to 120 days in jail. The concluding paragraphs of the order found Mother was in arrears $3,170.98 for the period December 9, 2011 through March 5, 2013 with interest of $112.47, for a total of $3,283.45, and on attorney's fees in the

amount of $1,200.00 for the period March 1 through July 31, 2012 with interest of $162.00 for a total of $1,352.00.

Mother commenced her confinement on March 5, 2013. On April 17, 2013, she filed an original petition for writ of habeas corpus in this court. We ordered Mother released on bond pending our final determination of her request for habeas corpus relief.

In five issues, mother claims the order holding her in contempt is void because (1) the motion for enforcement failed to comply with section 157.002(a)-(h) of the Texas Family Code; (2) the violations are irreconcilably inconsistent with the motion, arrearage, and interest, and failed to provide proper notice; (3) & (5) relator is indigent and cannot afford to pay arrearages; and (4) the contempt order is ambiguous.

## Habeas Standard

The purpose of a habeas corpus proceeding is not to determine the ultimate guilt or innocence of the relator, but to ascertain whether the relator has been confined unlawfully. *Ex parte Gordon*, 584 S.W.2d 686, 688 (Tex. 1979). Instead, our role is to determine whether relator was deprived of her liberty without due process of law or the judgment of confinement is void. *In re Alexander*, 243 S.W.3d 822, 824 (Tex. App.—San Antonio 2007, orig. proceeding). As part of our narrow inquiry, we examine the contempt order to ensure that it clearly states in what respect the court's earlier order has been violated and specifies the punishment imposed by the court. *Ex parte Shaklee*, 939 S.W.2d 144, 145 (Tex. 1997). We turn to Mother's specific allegations.

## Failure to Comply with Family Code

Mother contends that the trial court's contempt order is void because it does not comply with Texas Family Code section 157.166(a)(2), which provides: "(a) an enforcement order must include: (2) the acts or omissions that are the subject of the order." Tex. Fam. Code Ann. § 157.166(a)(1).

The purpose of an enforcement order is to notify the contemnor of how she has violated the provisions for which enforcement is sought and to provide sufficient information for an adequate review. *Ex parte Conoly*, 732 S.W.2d 695, 697 (Tex. App.—Dallas 1987, orig. proceeding). A contempt order is insufficient if its interpretation requires inferences or conclusions about which reasonable persons might differ. *In re Houston*, 92 S.W.3d 870, 877 (Tex. App.—Houston [14th Dist.] 2002, orig. proceeding).

The trial court found that Mother failed to comply with the December 9, 2011 order in two separate regards. First, the trial court found Mother specifically missed the following ordered child support payments:

| | |
|---|---|
| 01/01/2012 | $292.00 |
| 02/01/2012 | $292.00 |

Second, with regard to failure to pay attorney's fees as ordered, the trial court found Mother missed the following payments:

| | |
|---|---|
| 12/15/2011 | $100.00 |
| 01/15/2012 | $100.00 |
| 02/15/2012 | $100.00 |

5

| | |
|---|---|
| 03/15/2012 | $100.00 |
| 04/15/2012 | $100.00 |
| 05/15/2012 | $100.00 |
| 06/15/2012 | $100.00 |

Immediately following the trial court's enumeration of the specific failures of Mother to comply, the trial court found Mother "in contempt for each separate violation enumerated above." Finally, the court found Mother in criminal contempt and assessed punishment for each violation at 120 days in jail. The periods of confinement were also ordered to run concurrently.

The trial court included in its enforcement order the specific provisions sought to be enforced, and those on which the court assessed contempt. The enforcement order provides Mother sufficient notice of the provisions of the court's earlier order that the trial court found Mother had violated. The violations that the trial court found are sufficiently specific to notify Mother that they implicate the previous order's provisions requiring monthly payments of health insurance reimbursement as child support, and monthly installments toward payment of Father's attorney's fees. In the motion for enforcement, Father notified Mother of the specific provisions by quoting them from the previous order. Interpreting the trial court's findings thus does not require inferences or conclusions about which reasonable persons might differ. *See Houston*, 92 S.W.3d at 877. Moreover, the order provides adequate information for habeas corpus review of Mother's grounds for relief that the trial court found to be true. *See Conoly*, 732 S.W.2d at 698.

As the trial court's order fully apprised Mother of the violations found against her, and those findings related to specific violations alleged in the motion for enforcement, we hold that Mother has not overcome the presumption of the validity of the order so as to render it void. *See Ex parte Boyle*, 545 S.W.2d 25, 27 (Tex. Civ. App.—Houston [1st Dist.] 1976, orig. proceeding). Relator's first issue is overruled.

### Discrepancy in contempt findings and arrearage

In her second and fourth issues relator argues the violations are irreconcilably inconsistent with the motion, arrearage, and interest, and failed to provide proper notice. At the heart of this argument is Mother's contention that the specific violations for which she was found in contempt are not consistent with the total arrearages found in the court's order.

In the concluding paragraph of the order, the trial court found:

The Court further finds and confirms that Respondent is in arrears in the amount of $3,170.98 for the period December 9, 2011 through March 5, 2013 and that interest has accrued in the amount of $112.47. Judgment should be awarded against Respondent in the total amount of $3,282.45 for the arrearages and interest.

The Court further finds and confirms that Respondent is in arrears on attorney's fees in the amount of $1,200 for the period March 1 through July 31, 2012 and that interest has accrued in the amount of $162.00. Judgment should be awarded against Respondent in the total amount of $1,362.00 for the arrearages and interest.

Mother argues the commitment order is void because she cannot be held in contempt for failure to pay the amounts listed in the arrearage section of the judgment. However, Mother was not found in contempt for the total amount of

7

arrearages and is not required to pay the arrearage before being released from jail. The court assessed punishment for criminal, not civil, contempt.

The distinction between civil and criminal contempt is based on the nature and purpose of the penalty imposed. *Ex parte Johns*, 807 S.W.2d 768, 770 (Tex. App.—Dallas 1991, orig. proceeding). In a civil contempt proceeding, the court is attempting to persuade the contemnor to obey a previous order. *Id.* A judgment providing that a contemnor is to be committed unless and until she performs the affirmative act required by the court's order is a civil contempt order. *In re Mott*, 137 S.W.3d 870, 875 (Tex. App.—Houston [1st Dist.] 2004, orig. proceeding).

The purpose of a criminal contempt order is to punish for disobedience. *Ex parte Harrison*, 741 S.W.2d 607, 609 (Tex. App.—Austin 1987, orig. proceeding). A criminal contempt order is punitive and unconditional in nature and is an exertion of the court's inherent power to punish the contemnor for a completed act that affronted the court's dignity and authority. *Ex parte Werblud*, 536 S.W.2d 542, 545 (Tex. 1976) (orig. proceeding). Generally, the punishment for criminal contempt is fixed and definite; no subsequent voluntary compliance on the part of the defendant can enable her to avoid punishment for past acts. *Id.* at 546.

In this case, Mother was held in criminal contempt for failure to pay the enumerated payments listed in the motion for enforcement. The trial court, in the same order, stated the total arrearages in its concluding paragraph. Mother argues that she was improperly held in contempt for failure to make payments after the motion for enforcement was filed. To the contrary, the motion for enforcement was filed July 18, 2012. The specific violations for which Mother was held in contempt occurred prior to that date. Mother was not held in contempt for failure

to pay the total arrearage, nor must she pay those amounts to purge herself of contempt. Therefore, the fact that the amounts do not reconcile does not make the commitment order void. Relator's second and fourth issues are overruled.

## Inability to Pay

In her third and fifth issues, Mother urges that the statutory bar to contempt for inability to pay renders the contempt order void and one in violation of her due process rights. Specifically within these issues, Mother raises a number of arguments. First, Mother contends the trial court denied her the right to present evidence of her inability to pay. Second, Mother contends that the contempt order is silent as to how her statutory defense was overcome. Finally, Mother argues that the order fails because it does not overcome the "presumption of indigency."

Texas Family Code section 157.008(c) provides for the affirmative defense of inability to pay support in the amount ordered. In that regard, Mother carries the burden to prove this statutory defense by a preponderance of the evidence. *See* Tex. Fam. Code Ann. § 157.008(c)(1). Mother's burden in this court is to demonstrate that she established by a preponderance of the evidence that it was impossible for her to obey the court order at the time performance was due. *See Ex parte Raymer*, 644 S.W.2d 889, 890 (Tex. App.—Amarillo 1982, orig. proceeding). If Mother fails to carry that burden as to even one delinquent payment, the criminal contempt judgment is not void. *Id*.; *Ex parte Dabau*, 732 S.W.2d 773, 777 (Tex. App.—Amarillo 1987, orig. proceeding).

As outlined, Mother first urges that the trial court denied her the right to present evidence of her inability to pay. Mother contends that "the strict requirements of Tex. R. Civ. P. 94" should not apply in contempt cases. Mother's

argument implies that the trial court relied upon Rule 94 to prevent Mother from presenting evidence. However, we find no order as part of this record excluding or striking Mother's evidence.

Moreover, the record of the hearing held March 5, 2013 reflects that Mother was permitted to present evidence as to her inability to pay. At the hearing, Father presented evidence and Mother made an oral motion for directed verdict. The trial court ruled on each portion of the directed verdict then heard Mother's evidence.

Mother testified that she was aware that the medical support payments had increased to $292 per month. She sent one payment of $200 to the Attorney General's office on December 27, 2012, but Father did not receive that payment because an account had not been opened on behalf of the children through the Attorney General's office. At the time of the hearing Mother had been employed for two months. Her employer was deducting the support payments from her wages. From November 26, 2011 through January 26, 2012 Mother was employed and a portion of the support payment was being withheld from her wages. Mother testified that she did not have the ability to pay the monthly $292 in support until November, 2012 when she began working again. From January 27, 2012 through the beginning of 2013 she was unemployed. During the time she was unemployed she lived with her current husband who paid her living expenses. She testified that she could not afford the support while she was not working, she did not own real property and did not have any savings. She asked her mother and a former employer for the money, but they were unable to help her. On cross-examination Mother testified she owned a non-working vehicle, but had not tried to sell it. She did not attempt to borrow money from a financial institution.

On March 15, 2013, another hearing was held at which Mother's attorney requested Mother's release because the arrearage had been paid. Father's attorney appeared at the hearing and stated that the children's grandmother paid $3300 in child support on March 11, 2013, and paid $1600 toward the attorney's fees owed to Father's attorney. The trial court declined to release Mother because she had been found in criminal, not civil, contempt. We find nothing to support Mother's contention that the trial court denied her the right to present evidence of her inability to pay.

Next, we address Mother's criticisms of the contempt order for its silence as to how her statutory inability-to-pay defense was overcome and for its failure to outline how Mother's "presumption of indigency" was overcome. These arguments arise from Mother's reliance upon the trial court's prior finding of indigence under section 157.163 of the Texas Family Code. Specifically, Mother contends that she was found "legally indigent by the trial court on August 22, 2013 [sic], and there exists no explanation or finding sufficient to rebut that determination."

The record contains an affidavit[1] filed August 22, 2012 pursuant to section 157.163 of the Texas Family Code[2] along with an order of the same date finding that "Respondent is legally indigent and the attorney listed below is appointed to

---

[1] In Mother's affidavit, she averred that she was not employed, and received her last $600.00 paycheck on January 27, 2012, the date she lost her job. She further averred that within the past 12 months she had not received income from any business, profession or form of self-employment, rent payments, interest, dividends, pensions, annuities, or insurance payments. She received no money from any relative or friend, governmental agency, or any other source. She owned a 1996 Mercury Sable with an estimated value of $600.00, and her gross income stated on her last income tax return was $406.00.

[2] The document in the record reflects that it is filed pursuant to section 14.32 of the Family Code, which was repealed in 1995 and renumbered as section 157.163. *See* Acts 1995, 74th Leg., ch. 20, § 2, effective April 20, 1995.

represent Respondent, and said representation of Respondent shall be restricted to the pending allegation(s) of contempt or of violation of probation . . . ." Section 157.163 of the Family Code outlines the procedure for appointing counsel where the trial court determines that a motion for enforcement may result in incarceration. Under subsection (d) of that provision, the respondent must file an affidavit of indigence and, if the trial court determines that respondent is indigent, the trial court shall appoint an attorney to represent respondent.

By her reference to "presumption of indigency," Mother implicitly suggests that the trial court's finding of indigence under section 157.163 creates a "presumption of indigence" for purposes of the section 157.008(c) inability-to-pay affirmative defense. Thus, Mother concludes, the contempt order must show how Father overcame the prior section 157.163 indigence finding. Mother's argument is without support and fundamentally flawed.

The threshold for establishing section 157.163 indigence and establishing section 157.008(c) inability to pay is different. Section 157.163 contains no bright-line criteria for finding indigence. By section 157.008(c), on the other hand, the legislature was quite clear that a child-support obligor could not avoid contempt for its failure to pay child support unless it plead and affirmatively proved it:

(1) lacked the ability to provide support in the amount ordered;

(2) lacked property that could be sold, mortgaged, or otherwise pledged to raise the funds needed;

(3) attempted unsuccessfully to borrow the funds needed; and

(4) knew of no source from which the money could have been borrowed or legally obtained.

Tex. Fam. Code. Ann. § 157.008(c).

We agree with our sister court that the section 157.008(c) factors are not the criteria for establishing section 157.163 indigence because the purposes are different. *See In re Luebe,* 983 S.W.2d 889, 890 (Tex. App.—Houston [1st Dist.] 1999, orig. proceeding). Family law contempt proceedings are considered quasi-criminal in nature, and their proceedings should conform as nearly as practicable to those in criminal cases. *Ex parte Sanchez*, 703 S.W.2d 955, 957 (Tex. 1986) (orig. proceeding). The United States Constitution's Fourteenth Amendment guarantee of due process incorporates the Sixth Amendment assurance that the accused in a family law contempt proceeding has the right to counsel if the contemnor is at risk of incarceration. *In re Butler*, 45 S.W.3d 268, 271 (Tex. App.—Houston [1st Dist.] 2001, orig. proceeding). In an indigence inquiry analogous to appointment of counsel, both the Court of Criminal Appeals and this court have forbidden trial court's consideration of an individual's ability to borrow funds to determine indigence for purposes of obtaining a free transcript. *See Abdnor v. Ovard*, 653 S.W.2d 793, 794 (Tex. Crim. App. 1983); *see also Staten v. State*, 662 S.W.2d 672, 674 (Tex. App.—Houston [14th Dist.] 1983, no pet.) (holding that "the individual's financial status and not that of relatives or other sources" is the appropriate inquiry for indigence).

Because section 157.008(c) specifically requires a showing that the child-support obligor is unable to borrow the funds to meet his or her obligations, the inability-to-pay threshold is necessarily higher than the indigence threshold. Mother is incorrect that the trial court's determination that she is "legally indigent" for purposes of section 157.163 creates either a constructive determination of

section 157.008(c) inability to pay or a legal presumption that shifts the burden to Father.

Here, notwithstanding the trial court's finding that Mother was indigent for purposes of section 157.163, Mother had the section 157.008(c) burden to plead and prove inability to pay as an affirmative defense.

To prove the affirmative defense, Mother must show she has attempted unsuccessfully to borrow the funds needed and that she knows of no family members or friends from whom she could borrow the funds. Further, Mother must show she is not voluntarily underemployed or unemployed. *See Ex parte Papageorgiou*, 685 S.W.2d 776, 779 (Tex. App.—Houston [1st Dist.] 1985, orig. proceeding) ("relator indulged in working for an allegedly indigent corporation, rather than seeking salaried employment elsewhere.").

Having reviewed the evidence presented at the contempt hearing, we conclude that Mother failed to prove the affirmative defense of inability to pay. To support her contention that she was unable to make the payments Mother relies heavily on her unemployment from January 27, 2012 through early 2013. The record reflects, however, that the trial court found Mother in contempt for failure to make support and attorney's fee payments on January 1, 2012, February 1, 2012, December 15, 2011, and January 15, 2012. Each of those payments were missed at a time when Mother was employed. Further, although Mother testified she unsuccessfully attempted to borrow money from her mother and a former employer, she did not attempt to borrow money from a financial institution.

A trial court may reject the uncontroverted testimony of an interested witness if there are circumstances tending to discredit or impeach it. *Loftin v.*

14

*Texas Brine Corp.*, 777 S.W.2d 384, 386 (Tex. 1989).  A trial court is the sole judge of a witness's credibility and may resolve any inconsistencies in the testimony.  *Iliff v.. Iliff*, 339 S.W.3d 126, 135 (Tex. App.—Austin 2009), *aff'd*, 339 S.W.3d 74 (Tex. 2011).  Mother's testimony tends to show that she had the ability to pay support at least during the period of time she was employed.  Because Mother was permitted to present evidence, but was unable to prove the affirmative defense of inability to pay for each of the missed support payments, we overrule her third and fifth issues.

## Conclusion

We deny habeas corpus relief and remand relator to the custody of the Harris County Sheriff to serve the remainder of her sentence.


/s/    Sharon McCally
       Justice



Panel consists of Justices Brown, Christopher, and McCally.