**AFFIRMED and Opinion Filed March 26, 2020**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-19-00197-CV

## IN THE INTEREST OF V.I.P.M., A CHILD

**On Appeal from the 330th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DF-13-02616**

## MEMORANDUM OPINION
Before Justice Burns, Bridges, and Carlyle
Opinion by Chief Justice Burns

In twelve issues,[1] Father appeals, pro se, an order pursuant to which he was

held in contempt for failing to pay child support obligations, fined and ordered to

participate in community supervision, and which included a monetary judgment for

child support arrearages. We affirm.

---

[1] Father's "issues presented" include thirteen issues. He includes arguments regarding only twelve of those issues, however, and we thus address only the issues supported by argument. *See* TEX. R. APP. P. 38.1(i).

1

## I.

Incident to divorce proceedings, on April 2, 2015 Father was ordered to pay $574.00 in monthly child support (the Order). In September 2017, an enforcement agency for the State of Texas filed a motion to enforce child support obligations, requesting civil and criminal contempt sanctions. On December 14, 2017, Father was personally served with a citation, notice to show cause, order to appear and show cause, and the motion for enforcement of child support order. Father was arrested pursuant to a capias issued when he failed to appear as ordered, and after his release on bond, he filed an affidavit of inability to pay (the Affidavit). In August 2018, Father appeared in person, and during a hearing was advised of his rights and received personal and actual notice of the October trial setting. Trial, at which Father was represented by appointed counsel and testified, occurred on October 22, 2018. Although the trial court announced its verdict from the bench at the conclusion of the evidence, a further hearing by which the State sought entry of judgment was conducted on January 14, 2019 and judgment was entered the same day.

Pursuant to the Judgment, Father was found in contempt for four separate instances on which he had failed to pay child support, ordered to pay a $500 fine, and ordered to serve 179 days in confinement for each act of contempt. His commitment was suspended pursuant to his participation in community supervision for a period of ten years, for which he was also required to pay a $25.00 monthly

fee. The Judgment also included a monetary award for the arrearage due in the amount of $14,199.61.

Father appealed the Judgment in February 2019, stating he wished to "appeal all portions of the judgment," and identified the Judgment by its January 14, 2019 date. After we notified Father by letter that the monetary award included in the Judgment was reviewable on direct appeal while the contempt provisions were not, Father also filed a petition for writ of mandamus. We consolidated the original proceeding into this appeal, and now consider Father's arguments.

## II.

### A.     Standard of review

In reviewing the propriety of the monetary provisions of the Judgment, we apply an abuse of discretion standard. *In the Interest of T.J.L.,* 97 S.W.3d 257, 265 (Tex. App.—Houston [14th Dist.] 2002, no pet.) ("An appellate court reviews an order enforcing a previous child support order for abuse of discretion."). Under the abuse of discretion standard applied in family law cases, legal and factual sufficiency challenges are relevant factors in determining whether the trial court abused its discretion, rather than independent grounds for asserting error. *Moore v. Moore*, 383 S.W.3d 190, 198 (Tex. App.—Dallas 2012, pet. denied). In evaluating an abuse of discretion in this context, we first consider whether the trial court had sufficient evidence upon which to exercise its discretion, then determine if the trial court erred

in the application of its discretion. If some evidence of a "substantive and probative character" supports the trial court's decision, no abuse of discretion occurred. *In re Marriage of C.A.S. & D.P.S.*, 405 S.W.3d 373, 383 (Tex. App.—Dallas 2013, no pet.).

In contrast, with respect to the contempt aspects of the Judgment challenged by mandamus, we presume the Judgment's validity. *Ex parte Hayes*, No. 05-17-00473-CV, 2017 WL 2889047, at *2 (Tex. App.—Dallas July 7, 2017, orig. proceeding) (mem. op.). We will not vacate the Judgment premised on Father's mandamus challenge unless he demonstrates "the judgment is void because of a lack of jurisdiction or because . . . [he] was deprived of liberty without due process of law."

## B. Arguments regarding jurisdiction

Three of Father's issues, four, five and six, challenge the trial court's jurisdiction and authority to conduct hearings during a period in which Father contends jurisdiction rested in federal courts. Similarly, Father's eleventh issue addresses the constitutionality of an order issued on November 16, 2018, related to a motion to modify filed by Mother. Father's twelfth issue contests judicial immunity for acts purportedly taken while jurisdiction rested in the federal courts.

With the exception of a show cause hearing conducted on January 29, 2018, the capias issued following that hearing, the October 22, 2018 trial of the motion for

–4–

enforcement, and the hearing on the motion for entry of judgment discussed below, Father challenges orders and hearings that are not included within the scope of his appeal. To the extent Father's arguments address the order resolving Mother's motion to modify his visitation and custody,[2] his appeal was due thirty days from the date of that November 17, 2016 order.  *See* TEX. R. APP. P. 26.1; TEX. FAM. CODE § 156.004.  We lack jurisdiction over proceedings unrelated to the Judgment, and accordingly overrule Father's eleventh issue and confine our analysis to the Judgment and the proceedings from which it arose.  *See Thomas v. Thomas*, No. 14-02-01286-CV, 2003 WL 1088220, at *2 (Tex. App.—Houston [14th Dist.] Mar. 13, 2003, no pet.) (mem. op.) (where appellant included only one order in her notice of appeal, appellate court lacked jurisdiction over second order arising from separate and distinct motion for enforcement, since both orders were separately appealable); *see also, e.g., Blank v. Nuszen*, No. 01-13-01061-CV, 2015 WL 4747022, at *2 (Tex. App.—Houston [1st Dist.] Aug. 11, 2015, no pet.)  (suit for modification, filed after trial court's rendition of final decree, constitutes an "original" suit, and order disposing of modification request constitutes final appealable order); *State ex. rel. Latty v. Owens,* 907 S.W.2d 484, 485–86 (Tex.1995) (holding associate judge's

---

[2] Likewise, to the extent Father's purported challenge to the constitutionality of the "best interests of the child" standard in the family code, raised only in a notice filed more than six months after his brief, addresses issues related to Mother's motions to modify, those issues are not before us.  To the extent Father's purported constitutional challenge addresses judicial disqualification, we address it below.

order terminating father's parental rights became final and appealable when father failed to timely appeal to district court).

We also conclude jurisdiction rested in the trial court when it conducted each of the proceedings listed above and entered the Judgment. In an apparent effort to interrupt the trial court's jurisdiction, Father has removed this case to federal court three times. On November 18, 2016, one day after Father removed the case, Judge Lindsay sitting in the United States District Court for the Northern District of Texas, sua sponte remanded the case to the trial court because no federal subject matter jurisdiction existed. The federal docket reflects the clerk's transmission of the remand order and judgment to the trial court on the same date. Father again removed the case on April 17, 2018, following proceedings related to Mother's motion to modify visitation. On May 16, 2018, Judge Boyle, also sitting in Northern District of Texas, remanded the case to the trial court for the same reason. Undeterred, Father removed the case on June 7, 2018, and again, on June 29, 2018, Judge Boyle entered an order and judgment remanding the case, which was transmitted to the trial court on the same day by the clerk of the federal court.[3] Jurisdiction returned to the trial court immediately following entry of each remand order, on November 18, 2016; May 16, 2018; and June 29, 2018. *Gonzalez v. Guilbot*, 315 S.W.3d 533, 538

---

[3] The remand judgment includes a detailed analysis of the federal court's determination that federal subject matter jurisdiction was lacking.

(Tex. 2010) (Jurisdiction re-vests in state court, following federal order of remand, upon mailing or hand delivery of remand order to state court).

None of the proceedings relevant to entry of the Judgment occurred while the case was removed to federal court. Instead, the order to appear and show cause was issued on September 19, 2017, almost a year after the November 18, 2016 remand. Likewise, the January 29, 2018 show cause hearing at which the capias was issued occurred after the November 2016 remand and before the April 2018 removal. The hearing at which father was advised of his rights and during which the court appointed counsel occurred on August 8, 2018, after the June 2018 removal was remanded. Likewise, trial on the motion for enforcement occurred on October 22, 2018, also after the June 2018 remand, and the Judgment was entered long after the June 2018 remand.

Further, Father's subsequent appeals—to the Fifth Circuit regarding the November 2016 and June 2018 remand orders, and to the United States Supreme Court with respect to the November 2016 remand[4]—had no impact on our trial court's jurisdiction. Remand orders premised on the absence of subject matter jurisdiction, as each remand order in this case was, are "not reviewable on appeal."

---

[4] On September 8, 2018, the Fifth Circuit dismissed the appeal of the November 2016 remand, and on January 23, 2018 the United States Supreme Court denied Father's petition for writ of certiorari. On November 21, 2018, the Fifth Circuit dismissed Father's appeal of the June 2018 remand.

–7–

28 U.S.C. 1447(d); *Things Remembered, Inc. v. Petrarca,* 516 U.S. 124, 127–28, 116 S.Ct. 494, 133 L.Ed.2d 461 (1995) ("As long as a district court's remand is based on a . . . lack of subject-matter jurisdiction—the grounds for remand recognized by § 1447(c)—a court of appeals lacks jurisdiction to entertain an appeal of the remand order under § 1447(d)."). Thus, without a stay, Father's impermissible federal appeals had no impact on the trial court's jurisdiction, which existed from the moment the remand orders were filed below. *Academy Corp. v. Interior Buildout & Turnkey Const., Inc.*, 21 S.W.3d 732, 737 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (Absent a stay following remand, state court is "free to proceed," even if federal remand order is appealed). No jurisdictional defect exists regarding the Judgment, and we accordingly overrule Father's fourth, fifth, sixth, eleventh, and twelfth issues.

## C. Arguments related judicial disqualification

In his eighth issue, Father asserts every judge in Dallas County "is absolutely precluded by law from involvement" in any proceeding related to enforcement of child support orders because each has a "direct pecuniary interest" in child support enforcement and collections, premised on distribution of federal funding in connection with federal enforcement of child support collections. None of the authorities cited by Father regarding this argument support his contention, and we find none. Indeed, taken to its logical conclusion, Father's argument—that any

remote pecuniary impact on state budgets, which may indirectly and remotely impact judicial salaries, and thus require recusal of every judge in the county—would require disqualification of every judge in every county, in every state. We overrule Father's eighth issue.

## D.     Arguments related to Father's contempt

Many of Father's issues challenge the constitutionality, legality, and enforceability of the Judgment.  Father's first, second, third, and ninth issues rest on the premise that his rights—due process or other—were violated by the Judgment because he contends he established his indigency.  Specifically, Father's first issue alleges a court fine levied against an indigent party violates constitutional due process and due course of law; his second issue asserts a contempt finding against an indigent party for failing to pay a court-ordered levy violates those same rights; and his seventh and ninth issues contend federal law, binding on state judges,[5] prohibits wage garnishment orders against indigent parties. Father's third issue asserts the trial court erred in finding him in contempt and levying fines. Father's arguments confuse his unchallenged Affidavit, with an inability to pay child support,

---

[5] Father's seventh issue contends state courts are bound by federal law.  As discussed above, however, Father fails to describe any instance in which any of his rights, whether premised on federal or state law, were violated.

and fail to acknowledge the ample evidence supporting the trial court's determination that Father failed to demonstrate an inability to pay the child support.

The affirmative defense upon which Father relies—an inability to pay child support—is provided by Texas Family Code section 157.008(c). Father's burden to establish the defense required that he prove, for each instance he failed to pay support, he:

> (1) lacked the ability to provide support in the amount ordered;
> (2) lacked property that could be sold, mortgaged, or otherwise pledged to raise the funds needed;
> (3) attempted unsuccessfully to borrow the funds needed; and
> (4) knew of no source from which the money could have been borrowed or legally obtained.

TEX. FAM. CODE § 157.008.

Thus, Father's burden, distilled, required proving a complete inability to comply with the Order, each time he violated it. *In re Mancha*, 440 S.W.3d 158, 164 (Tex. App.—Houston [14th Dist.] 2013, orig. proceeding) (parent relying on section 157.008(c) defense required to prove obedience to order was impossible); *Ex parte McIntyre*, 730 S.W.2d 411, 417 (Tex. App.—San Antonio 1987, orig. proceeding). Demonstrating an inability to pay thus also included Father's burden to show he was not voluntarily underemployed or voluntarily unemployed. *In re Mancha,* 440 S.W.3d at 167.

In contrast, although the trial court appointed counsel to represent Father during the contempt proceedings after he filed his Affidavit, the implicit

–10–

determination of indigency underlying appointment of counsel has no bearing on whether Father carried his burden to establish an inability to pay defense. *Id.* at 166 (indigency inquiry triggering right to counsel in family law contempt proceedings derives from due process guarantees which in turn depend solely on individual defendant's financial status at time of relevant proceeding, without regard to ability to borrow funds); *see also Abdnor v. State*, 712 S.W.2d 136, 141–42 (Tex. Crim. App. 1986) ("[N]o rigid standard exists for determining indigency on appeal," but the "issue, of course, to be decided is that of the financial status at the time of the appeal...") (internal quotation omitted). Father's Affidavit, at best, fully addressed only element (2) and part of element (1) delineated by section 157.008: the value of saleable property, and father's current earnings. The Affidavit included no evidence regarding his willingness, (or lack thereof) or ability, to earn additional income sufficient to satisfy the obligation created by the Order. Nor does the Affidavit allow for cross-examination or evaluation of Father's credibility regarding his purported inability to earn more than the $1,000 per month he claimed to earn.

During the trial, Father testified regarding his assets, limited earnings, and purported inability to pay child support. Father also testified that he worked approximately 12 hours each week as a computer consultant earning about $125/hour, but spent up to 30 hours per week working on litigation, including his repeated efforts to convince federal courts to exercise jurisdiction. He admitted he

had not applied for or attempted to obtain other employment, testified about two vacations, admitted his cell phone bill was fully paid, that he was current on credit card payments, and that he owned a car. Mother testified that Father had an undergraduate degree from Yale and two master's degrees, and was able-bodied. At the conclusion of the trial, the trial judge found Father's assertion of an inability to pay child support was not credible.[6] She also included an express finding in the Judgment that Father was intentionally underemployed. We conclude Father's Affidavit had no bearing on his burden to establish his section 157.08(c)(1) inability to pay defense, the determination that he was in contempt, or the propriety of the fine and supervision fee assessed against him, and based on the foregoing, conclude the trial court did not abuse its discretion finding Father failed to carry his burden in establishing his inability to pay defense.

Moreover, neither Father's due process rights nor any other rights were violated by the trial court's determination that he was able to comply with the Order, but chose not to. The authorities cited by Father in support of his arguments are legally or factually inapplicable, and many have no bearing whatsoever on the issues before the Court. *See, e.g., Timbs v. Indiana*, 139 S. Ct. 682, 690, 203 L. Ed. 2d 11 (2019) (Eighth Amendment's Excessive Fines Clause applies to state civil asset

---

[6] The judge expressly recognized that Father's claim of earning $1,000 per month was not consistent with his later admission that he worked approximately 12 hours each week and earned $125 per hour.

forfeiture proceedings); *Campbell v. Wilder*, 487 S.W.3d 146, 151 (Tex. 2016) (Holding with respect to clerk's efforts to collect costs from parties who filed affidavits of inability to pay, "[a]n uncontested affidavit of inability to pay is conclusive as a matter of law. . . Without a finding by the court, the affidavit wholly supplants any costs."); *Yates v. State*, 505 S.W.3d 631, 646 (Tex. App.—Texarkana 2016, pet. ref'd) ("Attorney fees cannot be assessed against an indigent defendant unless there is proof and a finding that he is no longer indigent.").

Finally, Father's efforts to equate assessment of a fine as permitted by the government code, with imposition of costs prohibited by rule 145 and section 157.163 of the family code, fails. Fines are not costs. *See e.g., In re Byrom*, 316 S.W.3d 787, 792 (Tex. App.—Tyler 2010, orig. proceeding) ("[Criminal fines are not debts, and confinement for failure to pay criminal fines is not prohibited."). Section 21.002 of the government code allows a court, other than a justice or municipal court, to punish contempt by a fine of not more than $500. TEX. GOV'T CODE ANN. § 21.002. The fine has no compensatory purpose and is intended only to punish the contemnor. *Cadle Co. v. Lobingier*, 50 S.W.3d 662, 667 (Tex. App.—Fort Worth 2001, pet. denied).

In comparison, rule 145 allows a party who files a Statement of Inability to Afford Payment of Court Costs to avoid payment of "costs." TEX. R. CIV. P. 145. The rule expressly defines "costs" as "any fee charged by the court or an officer of

the court that could be taxed in a bill of costs, including, but not limited to, filing fees, fees for issuance and service of process, fees for a court-appointed professional, and fees charged by the clerk or court reporter for preparation of the appellate record." *Id.* Rule 145 speaks only to fees and costs, rather than fines. Thus, Father's rights were not violated because he was fined. Finding no defect, error or abuse of discretion by the trial court, we overrule Father's first, second, third, seventh and ninth issues.

**E.      Argument related to harm allegedly caused by Father's efforts to correct the trial court's alleged errors**

Father complains he was forced to spend inordinate amounts of time on legal work to appeal numerous errors by the trial court and accordingly had insufficient time to devote to earning funds he could have applied to his child support obligations. He contends he had no choice but to pursue his appeals and "[a] court that demands that a party forgo an appeal in order to make money for a court-imposed financial levy, while leaving an obviously-unconstitutional ruling intact, is clearly violating that person's First, Fifth, Eighth, and Fourteenth Amendment rights." We decline to validate Father's failure to support his child, excuse his own contempt, or justify his attempts to interfere with the trial court's jurisdiction by continually removing the case to federal court despite having been informed by the federal courts in no uncertain terms that federal jurisdiction was lacking. Moreover,

Father cites no authority for this argument and we find none.  We overrule Father's tenth issue.

**F.      Arguments challenging notice and issuance of a capias**

In his eleventh issue, Father argues the trial court abused its discretion and violated his due process rights by failing to notify him of hearings, and by issuing a capias warrant "as a means of debt collection."  Each argument lacks merit.

Contempt proceedings arising from a failure to pay child support are not unconstitutional debt collection proceedings.  Although the Texas Constitution provides that 'no person shall ever be imprisoned for debt,' *see* TEX. CONST. art. 1, § 18, our constitution does not bar confinement resulting from contempt powers for failing to pay child support because "the obligation to support a child is viewed as a legal duty and not as a debt." *Ex parte Hayes*, No. 05-17-00473-CV, 2017 WL 2889047, at 2 (Tex. App.—Dallas July 7, 2017, orig. proceeding) (mem. op.) (internal quotation omitted).  Accordingly, no error flows from issuance of a capias to seek Father's compliance with the Order.

With respect to notice, Father contends he was never served with the initial citation regarding the enforcement motion, and that he was not notified about unspecified hearings preceding issuance of the capias pursuant to which he was arrested.  Our record, however, reflects the motion for enforcement was filed on September 13, 2017 by an enforcement agency for the State of Texas, and the

supplemental record requested and received from the clerk includes the return of service evidencing personal service on Father, on December 14, 2017, of the citation, the notice to show cause, order to appear and show cause, and motion for enforcement. Thus, the record defeats Father's contention that he did not receive personal service of a citation.

Father identifies only one hearing regarding which he claims he received no notice—the show cause hearing at which he failed to appear, following which the trial court issued the capias. But again, our record includes an executed return of service expressly including service of the order to appear and show cause, served on December 14, 2017, requiring Father's appearance at the January 29, 2018 show cause hearing.[7]

Moreover, even if the record supported Father's argument that his notice of the show cause hearing was defective, he fails to demonstrate that any defect in notice regarding that hearing infected entry of the Judgment, or that any continuing consequence of the capias exists for our review. Instead, our record reflects that although Father was arrested pursuant to the capias, he was released on a cash bond

---

[7] We also observe the recitation in the order for issuance of the capias that

> The Court finds Respondent was duly and timely served with notice and this Court's Order to Appear and Show Cause; which order designated the date, time, and place for a hearing on the Dallas County Domestic Relations Office's Motion for Enforcement of the Child Support Order.

on or about February 16, 2018. Father has not asserted any collateral legal consequences arising from the capias, nor does our record reflect any. Indeed the language of the order directing the clerk to issue a capias limits its reach to having Father confined "until Respondent can be brought before the Court for further orders of the Court, or further sentencing." After release from confinement premised on the capias, on August 18, 2018, Father appeared in court in person, was advised of his rights with respect to potential criminal contempt, and counsel was appointed for him. During that hearing, in Father's presence, trial on the motion for enforcement was scheduled for October 22, 2018. The transcript from the trial confirms Father's admission that he received notice of the trial and reflects his meaningful participation. Thus, if any defect existed with respect to issuance of the capias, the defect became moot following Father's release and the subsequent notice and proceedings from which the Judgment arose. *See Ex parte Horton*, 305 S.W.3d 200, 202 (Tex. App.—Waco 2009, orig. proceeding, pet. ref'd) (dismissing appeal as moot where defendant's confinement was imposed pursuant to judgment following trial rather than prior issuance of capias about which respondent complained on appeal); *see also Martinez v. State*, 826 S.W.2d 620 (Tex. Crim. App. 1992) (concluding habeas relief regarding pre-trial confinement was moot, where applicant was also convicted of underlying offense and no longer subject to pre-trial confinement). We overrule Father's eleventh issue.

Any relief requested in any of Father's outstanding motions is **DENIED.** We affirm the Judgment.

/Robert D. Burns, III/
ROBERT D. BURNS, III
CHIEF JUSTICE

190197F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF V.I.P.M., A CHILD,

No. 05-19-00197-CV

On Appeal from the 330th Judicial District Court, Dallas County, Texas Trial Court Cause No. DF-13-02616. Opinion delivered by Chief Justice Burns. Justices Bridges and Carlyle participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered March 26, 2020